915 F.2d 738
 135 L.R.R.M. (BNA) 2640, 286 U.S.App.D.C. 295
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
GENERAL ELECTRIC COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
United Electrical, Radio and Machine Workers of America,
Local 618, Intervenor.
 No. 89-1628.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 5, 1990.
Rehearing Denied Dec. 11, 1990.
 
 Before WALD, Chief Judge, and RUTH BADER GINSBURG and SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the petition for review of an order of the National Labor Relations Board, and was briefed by counsel. The issues have been accorded full consideration by the Court, including oral argument, and occasion no need for a published opinion. See D.C.Cir.Rules 14(c), 14(d). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the Court, that the petition for review is hereby denied, and the National Labor Relations Board's order is hereby affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 The General Electric Company ("the Company") petitions this court for review of a decision of the National Labor Relations Board ("the Board") holding that the Company violated Secs. 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. Secs. 158(a)(1) and (5), when it subcontracted certain work at its Erie, Pennsylvania, facility without engaging in decision bargaining with Local 618 of the United Electrical, Radio and Machine Workers of America ("the Union"). The Board has filed a cross-application for enforcement of its order. We affirm the Board's order.
 
 
 5
 The Company concedes that, absent a waiver by the Union, the subcontracting decision would have required bargaining under the principles established by Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203 (1964), and its progeny. The Company argues, however, that prior to 1982 the Union waived its statutory right to demand bargaining by agreeing to a broad management rights clause in national contracts negotiated with the Company, by signing a Letter Agreement in 1970 concerning grievance procedures on work transfer issues, and by acquiescing in a pattern of unilateral decision-making by the Company. The Union then confirmed this waiver, the Company asserts, by its conduct in the course of national contract negotiations in 1982 and 1985. The Administrative Law Judge ("ALJ") and the Board rejected all of these contentions.
 
 
 6
 Neither the Union nor the Company presented extrinsic evidence concerning the adoption of the management rights clause or the 1970 Letter Agreement, and thus we owe no deference to the Board's conclusions on these issues of contract interpretation. See Local Union 1395, IBEW v. NLRB, 797 F.2d 1027, 1031 (D.C.Cir.1986) ("Indianapolis Power "). We nonetheless agree with the Board that the management rights clause was too general to amount to a "clear and unmistakable" waiver, as required by a long line of judicial and Board precedent. See, e.g., Johnson-Bateman Co., 295 N.L.R.B. No. 26 (1989); International Union UAW v. NLRB, 381 F.2d 265, 267 (D.C.Cir.1967), cert. denied, 389 U.S. 857 (1967). Likewise, we do not find a "clear and unmistakable" waiver in the 1970 Letter Agreement. A plausible construction of its language is that it merely provided for a special procedure, over and above any rights provided to the Union by statute, for handling disputes over the full range of work transfer issues--some but not all of which would be subject to mandatory decision bargaining between the Union and the Company.
 
 
 7
 On the remaining issues--whether the Union acquiesced to unilateral subcontracting by the Company and whether the Union waived its rights at the bargaining table--we owe deference to the Board's factual findings, if supported by substantial evidence. See Indianapolis Power, 797 F.2d at 1030, 1036. After carefully reviewing the record, we conclude that there is substantial evidence to support the Board's conclusions that the Union did not acquiesce to the Company's actions and that it did not waive its rights during the course of either the 1982 or 1985 bargaining.
 
 
 8
 We are disturbed, however, by the conclusory nature of the ALJ's factual findings and by the Board's summary affirmance of these findings. As counsel for the Board pointed out at oral argument, cases of this nature are highly fact-specific. This makes it incumbent upon the ALJ and the Board to give the facts the respect they deserve--a respect that is noticeably absent from the opinions in this case. It is evidently a fact of life at the Board that the press of business frequently permits it to do no more than summarily affirm the more thorough decision of the ALJ, and this court has recognized that this practice is "acceptable as a general matter." United Food & Commercial Workers v. NLRB, 880 F.2d 1422, 1436 (D.C.Cir.1989). But its acceptability depends crucially on there being a thorough canvassing of the facts by the ALJ. The bulk of the ALJ's "findings" in this case were in reality nothing more than a recitation of the testimony and documentary evidence presented at trial. Only a bare handful of statements can be read as actual findings of fact, and these appear without any reference to the conflicting evidence recited at length in the pages preceding them. The Board's opinion was even more laconic, affirming the ALJ's conclusions with virtually no substantive discussion. We affirm rather than remand for more thorough findings, however, because the ALJ and the Board did make the necessary ultimate factual conclusions from the evidence presented, albeit in bare conclusory fashion, and these conclusions are supported by substantial evidence. But the performance of the ALJ and the Board in this case comes perilously close to crossing the line from the "tolerably terse" to the "intolerably mute." Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (D.C.Cir.1970), cert. denied, 403 U.S. 923 (1971). We exhort both to speak with greater voice in the future.
 
 
 9
 For the reasons stated, the Company's petition for review of the Board's order is denied, and the order is affirmed in full.
 
 
 10
 So ordered.